UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

TRAVION BLOUNT,

             Petitioner,

    v.                                                  Civil Action No. 2:12cv699

HAROLD W. CLARKE,
Director of the Virginia
Department of Corrections,

             Respondent.

## ORDER

Before the Court is a Petition from Travion Blount ("Petitioner" or "Mr. Blount") for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1), and a Motion to Dismiss (ECF No. 3) advanced by Respondent Harold W. Clarke ("Respondent"). Mr. Blount argues that his initial sentence of six consecutive life terms followed by 118 years' imprisonment—and his subsequent sentence reduction to forty years' imprisonment—for non-homicide offenses he committed as a juvenile is contrary to, and an unreasonable application of, federal law. For the following reasons, this Court agrees. Respondent's Motion to Dismiss (ECF No. 3) is **DENIED**, and Mr. Blount's Petition (ECF No. 1) is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Blount was convicted by a Virginia state court of twelve counts of abduction with intent to extort money, ten counts of robbery, twenty-four counts of use of a firearm in the commission of a felony, one count of conspiracy to commit robbery, and two counts of attempted robbery. Mr. Blount was fifteen years old when he committed these offenses. He was sentenced to six consecutive death-in-prison sentences plus an additional 118 years' imprisonment.

Mr. Blount is ineligible for parole.  Va. Code § 53.1-165.1 (2014) ("Any person sentenced to a term of incarceration for a felony offense committed on or after January 1, 1995, shall not be eligible for parole upon that offense.").

In light of the United States Supreme Court's ruling in *Graham v. Florida*, 560 U.S. 48 (2010), Mr. Blount moved to vacate his sentences in Virginia trial court, arguing that his sentence of six consecutive death-in-prison terms for non-homicide felonies is contrary to, and an unreasonable application of, federal law under the Eighth Amendment to the United States Constitution and the Supreme Court's holding in *Graham v. Florida*.  In *Graham*, the Supreme Court held that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." 560 U.S. at 82; *see also Miller v. Alabama*, 132 S. Ct. 2455, 2465 (2012) (emphasis added) (recognizing that the *Graham* decision imposed a "*flat ban* on life without parole" for juveniles convicted of non-homicide offenses).

Following an evidentiary hearing, the Virginia trial court denied Mr. Blount's Motion to Vacate Sentence, and concluded that Virginia's Geriatric Release Provision[1] provides "an appropriate mechanism" for compliance with *Graham*.  ECF No. 1 at 3.  In support of its decision, the state trial court cited *Angel v. Commonwealth*, 704 S.E.2d 386 (Va. 2011), which held that Virginia's Geriatric Release Provision provides a meaningful opportunity to obtain release for juvenile non-homicide offenders in compliance with *Graham*.

---

[1] Virginia's Geriatric Parole Provision provides:

> Any person serving a sentence imposed upon a conviction for a felony offense, other than a Class 1 felony, (i) who has reached the age of sixty-five or older and who has served at least five years of the sentence imposed or (ii) who has reached the age of sixty or older and who has served at least ten years of the sentence imposed may petition the Parole Board for conditional release.

Va. Code § 53.1-40.01 (2014).

Mr. Blount filed a Notice of Appeal to the Court of Appeals of Virginia; the Court of Appeals denied the appeal in reliance on *Angel v. Commonwealth*. Mr. Blount filed a request for further review before a three-judge panel of the Court of Appeals, which was also denied. Thereafter, Mr. Blount filed a Petition of Appeal to the Supreme Court of Virginia, which was refused as well.

Mr. Blount next filed the instant Petition, seeking habeas relief on two grounds. First, Mr. Blount alleges that construing the invocation of Virginia's Geriatric Parole Provision as a meaningful opportunity for a juvenile non-homicide offender to obtain release from a death-in-prison sentence is contrary to clearly established federal law as recognized by the Supreme Court in *Graham*. Second, Mr. Blount alleges that the Virginia courts' determination that the Geriatric Parole Provision satisfies the aforementioned *Graham* requirement, in reliance on *Angel v. Commonwealth*, is an unreasonable application of clearly established federal law. Respondent filed an Answer and Motion to Dismiss the Petition.

The matter was referred for disposition to a United States Magistrate Judge. In a Report and Recommendation (ECF No. 8), the Magistrate Judge recommended granting Respondent's Motion to Dismiss and denying the Petition on the merits.[2] The parties were advised of their right to file written objections to the Report and Recommendation. Mr. Blount filed objections to the Report and Recommendation, seeking appointment of counsel and arguing that the Magistrate Judge erred in holding that the Geriatric Parole Provision provides a meaningful

---

[2] In reviewing a Report and Recommendation, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by the Magistrate Judge. 28 U.S.C. § 636(b)(1) (2009); *accord* Fed. R. Civ. P. 72(b)(3). To the extent a party makes specific and timely written objections to a Magistrate Judge's findings and recommendations, this Court must review *de novo* "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); *accord* Fed. R. Civ. P. 72(b)(3). This Court has done so.

opportunity for release as required by *Graham*.   Respondent declined to respond to these objections and filed no objections. The Court ordered supplemental briefing on the matter.

Mr. Blount also filed a request for a conditional pardon with the Governor's Office, requesting that then-Governor Robert F. McDonnell modify his term of imprisonment "to a more appropriate amount of time for the crimes he committed, which many believe might be somewhere between ten and twenty years' incarceration."  On January 15, 2014, Respondent informed the Court that on January 10, 2014, then-Governor McDonnell "pardoned" Mr. Blount and "commuted the petitioner's sentence of six consecutive life terms and 118 years in prison to a prison term of 40 years." ECF No. 23.

In light of this executive action, this Court issued a Certification Order to the Supreme Court of Virginia, presenting the following two questions: (1) "Is the document which emanated from the Executive Department [on January 10, 2014 and signed by then-Governor Robert F. McDonnell] to be considered a conditional pardon or a commutation?" and (2) "Were the actions taken by the Governor of Virginia valid under the Virginia State Constitution?" ECF No. 48.

In response to the first certified question, the Supreme Court of Virginia answered that the executive order from then-Governor McDonnell constituted a self-executing "partial pardon," the validity of which was independent of Mr. Blount's acceptance of it. The Supreme Court of Virginia answered the second question in the affirmative, finding that the Governor was empowered to issue a conditional pardon or a partial pardon under Article V, Section 12 of the Constitution of Virginia. ECF No. 55-1.

In the wake of the partial pardon and the Certified Answers provided by the Supreme Court of Virginia, the parties presented the following positions.  Mr. Blount argues that the executive commutation of his sentence to forty years fails to cure the constitutional violation that

occurred at sentencing: regardless of the partial pardon, Mr. Blount was sentenced as an adult for crimes that he committed as a juvenile without regard for his immaturity and potential for rehabilitation, in clear violation of *Graham*.   Mr. Blount argues further that the forty-year sentence he eventually received is the functional equivalent of imprisonment until the opportunity to apply for geriatric parole arises, which does not pass constitutional muster under *LeBlanc v. Mathena*, No. 15-7151, 2016 WL 6652438 (4th Cir. Nov. 10, 2016), and which should be construed as virtually a life-without-parole sentence.   Mr. Blount also argues that imposing the partial pardon without a re-sentencing hearing violated his due process rights.

Respondent argues that Mr. Blount's claims challenging his life sentences have been rendered moot because the Governor's executive order was found to be constitutional by the Supreme Court of Virginia.   Respondent contends that Mr. Blount's forty-year sentence does not run afoul of *Graham*, arguing that "a sentence allowing the offender unconditional release after forty years cannot constitute an impermissible life-without-parole sentence." ECF No. 54 at 6.

## STANDARDS OF LAW

### I. Motion to Dismiss

"In proceedings under § 2254, the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to the government's motion to dismiss." *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009); *see also Brooks v. Clarke*, No. 3:15-CV-13, 2015 WL 1737993, at *3 (E.D. Va. Apr. 16, 2015) (employing the Rule 12(b)(6) standard to a motion to dismiss a habeas petition). "Thus, a motion to dismiss a § 2254 petition under Rule 12(b)(6) tests the legal sufficiency of the petition, requiring the federal habeas court to 'assume all facts pleaded by the § 2254 petitioner to be true.'"[3] *Walker*, 589 F.3d at 139 (citation omitted).

---

[3] If the Commonwealth filed its Answer to the Petition and its Motion to Dismiss simultaneously, "it technically should have filed the motion under Rule 12(c) as one for judgment on the pleadings." *589*

"In assessing whether the § 2254 petition states a claim for relief, the district court must consider "the face of the petition and any attached exhibits." *Id.* (citation omitted). A court may consider material from the record of the state habeas proceeding, including affidavits and evidence presented at trial, "without having to convert the Rule 12(b)(6) motion to one for summary judgment under Rule 56(b)." *Id.* This Court may consider matters of public record, such as prior state court documents, "in conjunction with a Rule 12(b)(6) motion." *Id.*

To survive a motion to dismiss, a complaint must contain sufficient factual information "to state a claim to relief that is plausible on its face." *Brooks*, 2015 WL 1737993, at *4 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009)). In evaluating a Motion to Dismiss, the Court must determine whether the petitioner "came forward with sufficient evidence to survive the Commonwealth's dispositive motion [to dismiss] and advance his claim for a merits determination." *Walker*, 589 F.3d at 139.

## II. Petition for Habeas Relief

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this Court's consideration of a state prisoner's petition for writ of habeas corpus under 28 U.S.C. § 2254. *Richardson v. Branker*, 668 F.3d 128, 138 (4th Cir. 2012). The AEDPA standard mandates that a writ of habeas corpus "shall not be granted" for any claim that was adjudicated on the merits in a state court proceeding, unless the state court's adjudication was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

---

F.3d at 139. The United States Court of Appeals for the Fourth Circuit, therefore, would construe "the Commonwealth's motion as a motion under Rule 12(c) which is assessed under the same standard that applies to a Rule 12(b)(6) motion." *Id.*

Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2015).

The AEDPA "restricts [the] intrusion of state sovereignty by limiting the federal courts' power to issue a writ to exceptional circumstances, thereby helping to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding." *Richardson*, 668 F.3d at 138. This Court acknowledges that:

> 'state courts are the principal forum for asserting constitutional challenges to state convictions,' that habeas corpus proceedings are a 'guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal,' and that a federal court may only issue the writ if 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents.'

*Id.* at 132 (alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)).

In reviewing state court rulings on post-conviction relief, courts are "mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015), *as amended* (Apr. 15, 2015) (quoting *Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003)).

The AEDPA "demands that state court decisions be given the benefit of the doubt," and it is error for a federal court to conduct *de novo* review of habeas claims that were adjudicated on the merits by a state court. *Richardson*, 668 F.3d at 140-41.

However, "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review, and does not by definition preclude relief." *Brumfield v. Cain*, No. 13-1433, 2015 WL 2473376, at *6 (U.S. June 18, 2015) (alteration in original). The Supreme Court has emphasized that:

> a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.

*Richter*, 562 U.S. at 102.

Further, the AEDPA "directs a federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims." *Hittson v. Chatman*, No. 14-8589, 2015 WL 786705, at *1 (June 15, 2015) (Ginsburg, J., concurring). "*Richter* makes clear that where the state court's real reasons can be ascertained, the § 2254(d) analysis can and should be based on the actual 'arguments or theories [that] supported . . . the state court's decision.'" *Id.* at *2 (alteration in original).

A state's highest court may render an order or summary dismissal, denial, or affirmance of the trial court decision without explanation. When this occurs, the lower court's decision might be the only "reasoned state judgment rejecting [the] federal claim." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). The reviewing federal court employs a rebuttable presumption that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground" as was articulated by the reasoned state judgment. *Id.* (discussing what has become known as the "look through" rule, which directs reviewing federal courts to "look through" to the last reasoned decision in the state courts); *see also Hittson*, 2015 WL 786705, at *2 (noting that *Richter* did not supersede or overrule *Ylst*).

## ANALYSIS

### I. Motion to Dismiss

As noted, when considering Respondent's motion to dismiss, the Court need only decide whether Mr. Blount "came forward with sufficient evidence to survive [Respondent's] dispositive motion [to dismiss] and advance his claim for a merits determination." *Walker v.*

8

*Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). A motion to dismiss "tests the legal sufficiency of the petition, requiring the federal habeas court to assume all facts pleaded by the § 2254 petitioner to be true." *Id.*

Mr. Blount's habeas petition challenges the denial of his Motion to Vacate by the Virginia state court, and argues that the Supreme Court of Virginia erred in refusing his Petition for Appeal. In its denial of Mr. Blount's Petition for Appeal of the trial court's unfavorable decision, the Court of Appeals of Virginia relied on *Angel v. Commonwealth* and held, "In the wake of *Graham*, the Supreme Court of Virginia concluded that Code § 53.1-40.01 [the Geriatric Parole Provision] provided juvenile offenders with the 'meaningful opportunity to obtain release' required by the Eighth Amendment." ECF No. 5-4 at 2.

Respondent's Motion to Dismiss, which challenges the legal sufficiency of Mr. Blount's habeas petition, seeks dismissal based on the assertion that the state court's ruling[4] is neither contrary to, nor an unreasonable application of, *Graham*, and does not rest upon an unreasonable finding of facts. Respondent contends that "[i]n Virginia, a juvenile, tried and treated as an adult and sentenced to life for a non-homicide offense, is eligible to seek geriatric parole." ECF No. 5 at 9. It is undisputed that Mr. Blount exhausted all available state remedies, and that his federal habeas petition was timely filed. His petition is not procedurally barred from federal review, because the constitutional claim raised in the instant federal habeas petition was adjudicated on the merits in state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Although Mr. Blount's sentences were later reduced to forty years' imprisonment, he was sentenced initially in state court to six consecutive death-in-prison terms (in addition to 118 years' imprisonment) for non-homicide offenses that he committed as a juvenile. In *Graham*, the

---

[4] As the last reasoned order addressing Mr. Blount's constitutional claim under *Graham*, this Court looks through the Virginia Supreme Court's refusal order to the October 14, 2011 Order of the Court of Appeals of Virginia. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *see* ECF No. 5-4.

Supreme Court established a "categorical bar" or "flat ban" against such sentences. *See Graham*, 560 U.S. at 78-79. Despite this ruling, the Virginia state court denied relief on collateral review and concluded that Mr. Blount's initial sentences of six death-in-prison terms were appropriate from the outset because of the possible availability of geriatric release.

By challenging the constitutionality of the state court's decision and providing ample legal and evidentiary support, Mr. Blount has alleged sufficient factual information to state a claim to relief that is plausible on its face. Accordingly, Respondent's Motion to Dismiss must be denied.

## II. Petition for Habeas Relief

### A. The State Court's Decision Amounts to an Unreasonable Application of Clearly Established Federal Law

Under the AEDPA, a federal court may grant habeas relief to a state prisoner if the prisoner's state adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the fact in light of the evidence presented in the state court proceeding," *id.* § 2254(d)(2). As noted, the Court examines the "last reasoned" state court decision in assessing a state prisoner's habeas claims. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).

In its denial of Mr. Blount's Petition for Appeal, the Court of Appeals of Virginia relied on *Angel v. Commonwealth*, in which the Supreme Court of Virginia held that Virginia's Geriatric Parole Provision provided juvenile offenders with a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" as required by *Graham* and the Eighth Amendment. However, the Fourth Circuit has recognized recently that Virginia's Geriatric Release Provision fails to comply with this requirement, concluding that a state court

decision upholding a life sentence for a juvenile non-homicide offender in reliance on *Angel v. Commonwealth* amounted to an unreasonable application of *Graham*. *LeBlanc v. Mathena*, No. 15-7151, 2016 WL 6652438 (4th Cir. 2016).

With the exception of the Governor's "partial pardon" (addressed below), the relevant procedural history of *LeBlanc* mirrors the facts of this case. The petitioner in *LeBlanc* was convicted of rape and abduction in Virginia state court as a juvenile, and was sentenced to two life terms. He was ineligible for parole because the offenses were committed after January 1, 1995. In 2011, following *Graham*, the petitioner filed a motion to vacate his sentence in state court, arguing that his life sentences were invalid under *Graham*. The state trial court denied relief in reliance on *Angel v. Commonwealth*, and the Supreme Court of Virginia denied the petition for appeal. *LeBlanc*, 2016 WL 6652438, at *1.

The Fourth Circuit's holding in *LeBlanc* applies here. As was the case in *LeBlanc*, the Virginia state court relied on *Angel v. Commonwealth* and determined, unreasonably, that Virginia's Geriatric Release Provision satisfied *Graham*'s requirement that juvenile offenders be afforded with a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. Therefore, this Court is compelled to conclude that the Virginia state court's denial of relief to Mr. Blount in reliance on *Angel v. Commonwealth* and the availability of geriatric release amounted to an unreasonable application of the clearly established federal law announced in *Graham*.

**B. The Governor's Partial Pardon Fails to Cure the Constitutional Violations that Occurred at the State Court Level**

Respondent argues that, in the wake of the former Governor's imposed "partial pardon" and the corresponding reduction of Mr. Blount's sentence to forty years' imprisonment, Mr. Blount's claims challenging the constitutionality of his life sentences are moot. Respondent cites

11

no case law or legal authority in support of this proposition, but instead relies on this Court's Certification Order to the Supreme Court of Virginia. *See* ECF No. 48 at 5, 7 ("If Mr. Blount's sentence has been validly commuted to a sentence of forty years, his claims challenging his life sentences are moot.").

As noted, the Supreme Court of Virginia responded to this Court's Certification Order by finding that then-Governor McDonnell's act of imposing a reduction in Mr. Blount's sentences to a term of forty years constituted a "partial pardon," which was self-executing and valid under the Constitution of Virginia.  ECF No. 55-1 at 11.  The Supreme Court of Virginia did not address the ramifications of the Governor's "partial pardon" on the pending federal habeas petition before this Court, or the constitutionality of the Governor's act under federal law as set forth in *Graham* and *LeBlanc*.  Neither did this Court's Certification Order.  The scope of the Certified Questions and Answers was confined to the interpretation of Virginia state law: specifically, how the Governor's executive act (which was titled a "Commutation of Sentence") should be characterized under state law, and whether that act was permitted by the Constitution of Virginia.

Mr. Blount's federal habeas petition—which challenges the constitutionality of the state courts' imposition of multiple life sentences in violation of *Graham* and its reliance on Virginia's Geriatric Parole Provision in violation of *LeBlanc*—is not rendered moot by the former Governor's "partial pardon." The imposed "partial pardon" is an executive action that did not affect Mr. Blount's eligibility for habeas relief. *United States v. Gibson*, No. 94-CR-454, 2017 WL 1301514 (D. Md. Apr. 7, 2017) (holding that a presidential commutation of a defendant's sentence from life imprisonment to thirty years' imprisonment is an executive action that does not preclude the defendant from seeking a further sentence reduction pursuant to 18 U.S.C. §

3583) (citing *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 284 (1998) ("Clemency proceedings . . . [are] independent of . . . collateral relief proceedings.")).

Furthermore, "[a]n incarcerated convict's . . . challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration constitutes a concrete injury, caused by the conviction and redressable by invalidation of conviction." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (holding that a petitioner's claim becomes moot if a "case-or-controversy" is no longer presented, or if a petitioner does not continue to have a "personal stake in the outcome" of the action). Because incarceration constitutes a "concrete injury," a prisoner's challenge to the validity or duration of an unexpired *sentence*—which, like the conviction itself, is also caused by the conviction and is redressable through re-sentencing—presents a justiciable case or controversy.

The Fourth Circuit has examined, briefly, the effect of a presidential commutation on an appeal of a death-in-prison sentence. *United States v. Surratt*, 855 F.3d 218 (4th Cir. 2017). In *Surratt*, the petitioner sought habeas relief pursuant to 28 U.S.C. § 2255, asserting that his life sentence was unconstitutional in light of the subsequently enacted (and retroactively applicable) Fair Sentencing Act. Under the Fair Sentencing Act, the petitioner would face a mandatory minimum sentence of ten years' imprisonment. While the appeal of the district court's denial of the habeas petition was pending before the Fourth Circuit, President Obama commuted the petitioner's life sentence to just under seventeen years. *Id.* at 224.

In a brief Memorandum Order, the majority held that the commutation of the concededly incorrect sentence rendered the appeal moot. *Id.* at 219. However, Justice Wynn, in dissent, recognized that the Seventh Circuit ("the only circuit that appears to have squarely addressed the issue"), has "refused to find mootness in analogous circumstances" and has held that "a

petitioner may collaterally challenge his original sentence, notwithstanding that the challenged sentence was commuted [by the Governor] during the course of litigating that collateral challenge, when the commuted sentence exceeds the mandatory minimum the petitioner would face if he prevailed on his collateral challenge." *Id.* at 226 (Wynn, J., dissenting from Memorandum Order, citing *Simpson v. Battaglia*, 458 F.3d 585, 595 (7th Cir. 2006)).

The facts presented in Mr. Blount's case are aligned with the Seventh Circuit's reasoning. The Governor of Virginia—not the President of the United States—altered Mr. Blount's sentence by imposing a "partial pardon." Second, the government in *Surratt* successfully argued on appeal that the petitioner implicitly forfeited or waived his right to collaterally challenge his original sentence by accepting the commutation. In contrast, Mr. Blount does not assent to the Governor's "partial pardon" and its accompanying forty-year sentence. Third, and perhaps most importantly, Mr. Blount is distinguishable from the petitioner in *Surratt* because Mr. Blount was a juvenile at the time of his offense.

In the absence of substantive reasoning behind the majority's ruling the Memorandum Order in *Surratt*, this Court is persuaded by the dissenting opinion and its reliance on Seventh Circuit precedent, particularly the principle that a petitioner's original sentence remains unlawful regardless of whether the "current sentence" suffers from a constitutional or "fundamental defect." *Id.* at 225 (internal quotation omitted). Because the Court "cannot be sure that [Mr. Blount's] unlawful original sentence did not taint his ["partially pardoned"] sentence, [Mr. Blount] suffers a continuing injury from that original sentence," an injury that can be remedied "by vacating the ["partially pardoned"] sentence and remanding for resentencing." *Id.* at 230. In accordance with the significant principles enunciated by the Supreme Court in *Miller* and *Graham*, this Court declines to adopt a "narrow interpretation" of the law, particularly because

14

such an interpretation would foreclose the possibility of federal habeas relief to juvenile offenders. *Contreras v. Davis*, No. 1:13CV772, 2017 WL 372330, at *4 (E.D. Va. Jan. 26, 2017).

In *Battaglia*, the Seventh Circuit considered the Illinois Governor's commutation of a petitioner's death sentence to life imprisonment while the petitioner's habeas motion was pending in federal court. In his habeas motion, the petitioner challenged the constitutionality of his sentencing procedure, alleging claims of ineffective assistance of counsel and failure to appoint a mitigation expert. The Seventh Circuit held that the petitioner's habeas claims were not moot because it was still possible for the petitioner to obtain relief on collateral review: his commuted sentence was life imprisonment, while the statutory minimum sentence was twenty years. *Battaglia*, 458 F.3d at 595-96. The court also emphasized that "[t]he relevant decision for purposes of our assessment [of the petitioner's habeas claim brought under 28 U.S.C. § 2254] is the decision of the last state court to rule on the merits of the petitioner's claim." *Id.* at 592 (internal citations omitted).

Mr. Blount was convicted of ten counts of robbery, in violation of Va. Code § 18.2-58;[5] two counts of attempted robbery, in violation of Va. Code §§ 18.2-58 and 18.2-26;[6] one count of conspiracy to commit robbery, in violation of Va. Code §§ 18.2-58 and 18.2-22;[7] twelve counts

---

[5] "If any person commit robbery by . . . assault or otherwise putting a person in fear of serious bodily harm, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony and shall be punished by confinement in a state correctional facility for life or *any term not less than five years*." Va. Code § 18.2-58 (emphasis added).

[6] "Every person who attempts to commit an offense which is a noncapital felony shall be punished as follows: (1) If the felon attempted is punishable by a maximum punishment of life imprisonment or a term of year in excess of twenty years, an attempt thereat shall be punishable as a Class 4 felony." Va. Code § 18.2-26(1).

[7] "If any person shall conspire, confederate or combine with another, either within or without this Commonwealth, to commit a felony within this Commonwealth, . . . he shall be guilty of a felony which shall be punishable as follows: (2) Every person who so conspires to commit an offense which is a noncapital felony shall be guilty of a Class 5 felony." Va. Code § 18.2-22(a)(2). "However, in no event

15

of abduction with intent to gain pecuniary benefit, in violation of Va. Code § 18.2-48(i);[8] one count of use of a firearm in the commission of a felony (first offense), in violation of Va. Code § 18.2-53.1;[9] and twenty-three counts of use of a firearm in the commission of a felony (second or subsequent offense), in violation of Va. Code § 18.2-53.1. The statutory minimum sentences for these offenses are less than the forty-year sentence that Mr. Blount received through the former Governor's "partial pardon." "A full remedy for the constitutional shortcoming at the original sentencing hearing entails allowing [the petitioner] to seek that lower sentence now." *Battaglia*, 458 F.3d at 595 (internal citation omitted). Mr. Blount's habeas petition, therefore, may be resolved on the merits. *See id.* at 596.

As noted, a federal court may grant habeas relief to a state prisoner "if the prisoner's state court adjudication 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *LeBlanc*, 2016 WL 6652438, at *4 (quoting 28 U.S.C. § 2254(d)(1)). Here, the constitutional infirmity existing before the former Governor's "partial pardon" remains: Mr. Blount was sentenced to multiple terms of life imprisonment for non-homicide offenses that he committed as a juvenile without regard for his immaturity and potential for rehabilitation, and his sentences were upheld by the Virginia state court in reliance on *Angel v. Commonwealth*.

---

shall the punishment for a conspiracy to commit an offense exceed the maximum punishment for the commission of the offense itself." Va. Code § 18.2-22(b)

[8] "Abduction (i) of any person with the intent to extort money or pecuniary benefit, . . . shall be punishable as a Class 2 felony." Va. Code § 18.2-48(i). The authorized punishments for conviction of a felony are: (b) for Class 2 felonies, imprisonment for life or for *any term not less than 20 years*." Va. Code § 18.2-10(b) (emphasis added).

[9] "Violation of this section shall constitute a separate and distinct felony and any person found guilty thereof shall be sentenced to a mandatory minimum term of imprisonment of three years for a first conviction, and to a *mandatory minimum term of five years for a second or subsequent conviction* under the provisions of this section. *Such punishment shall be separate and apart from, and shall be made to run consecutively with, any punishment received for the commission of the primary felony.*" Va. Code § 18.2-53.1 (emphasis added).

Mr. Blount argues that his sentencing was constitutionally deficient because the sentencing court made a determination, at the outset, that he was unfit to reenter society. He contends that by imposing life sentences upon a juvenile non-homicide offender, the sentencing court violated the constitutional mandates established by *Graham*. This Court agrees. The imposition of six consecutive life sentences (followed by 118 years' imprisonment) clearly violated *Graham*. The Fourth Circuit recognizes that *Graham* imposes a flat ban against sentencing juvenile non-homicide offenders to life without parole. *See, e.g., Johnson v. Ponton*, 780 F.3d 219, 222 (4th Cir.) (finding that *Graham* "categorically barred life-without-parole sentences for juvenile nonhomicide offenders"); *In re Vassell*, 751 F.3d 267, 269-70 (4th Cir. 2014) (finding that *Graham* "prohibited imposing *any* sentence of life without parole— mandatory or individualized—for juveniles convicted of committing nonhomicide offenses") (emphasis in original). Although Mr. Blount's sentencing occurred before *Graham* was decided, the parties do not contest *Graham*'s retroactive effect.[10]

Furthermore, the "last reasoned" state court adjudication—the decision to deny Mr. Blount's Petition for Appeal by the Court of Appeals of Virginia—involved an unreasonable application of *Graham*. After *Graham* was decided, the Virginia state court upheld Mr. Blount's six consecutive death-in-prison sentences by relying on *Angel v. Commonwealth*, and determined that the availability of geriatric parole provided a meaningful opportunity for release for juvenile

---

[10] Regarding the retroactivity of *Graham*'s holding, this Court also relies upon recent decisions by, and within, the Fourth Circuit. *See In re Vassell*, 751 F.3d 267, 269-70 (4th Cir. 2014) (implicitly recognizing *Graham*'s retroactive effect on collateral review); *In re Sloan*, 570 Fed. App'x 338, 339 (4th Cir. 2014) (same); *United States v. Evans*, No. 2:92cr163-5, 2014 WL 1165858 (E.D. Va. March 21, 2014) (not reported) (holding that the rule announced in *Graham* constitutes a new rule of constitutional law that was previously unavailable, and that the Supreme Court has made this rule retroactively applicable to cases on collateral review). The Supreme Court's ruling in *Montgomery v. Louisiana* is also instructive, holding that the Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012)—which found unconstitutional mandatory life-without-parole sentences for juvenile homicide offenders—is retroactively applicable on collateral review. *Montgomery v. Louisiana*, 136 S. Ct. 718, 723 (2016).

non-homicide offenders. The Fourth Circuit has reached the opposite conclusion, and has held that the state court's reliance on *Angel v. Commonwealth* in upholding life sentences for juvenile non-homicide offenders involves an objectively unreasonable application of the Supreme Court precedent enunciated in *Graham*. *See generally LeBlanc*, 2016 WL 6652438.

In addition to the Fourth Circuit striking down Virginia's geriatric parole provision as an avenue for complying with *Graham*, the United States Supreme Court has considered and rejected the availability of executive clemency as a possible opportunity for providing a meaningful opportunity for release. In *Graham*, the Supreme Court held that the possibility of executive clemency did not satisfy the "meaningful opportunity to obtain release" requirement. *Graham*, 560 U.S. at 48; *see also Maryland Restorative Justice Initiative v. Hogan*, No. ELH-16-1021, 2017 WL 467731 (D. Md. Feb. 3, 2017). Although Mr. Blount received a form of executive clemency, this Court cannot construe *Graham* "in the narrowest light possible." *Contreras v. Davis*, No. 1:13CV772, 2017 WL 372330, at *4 (E.D. Va. Jan. 26, 2017). The *Graham* Court described executive clemency as a "remote possibility," which "does not mitigate the harshness of the sentence." *Graham*, 560 U.S. at 70. The crux of *Graham* is that the Eighth Amendment "prohibit[s] States from making the judgment at the outset that [juvenile non-homicide offenders] never will be fit to reenter society." *Id.* at 74. That occurred in this case, and a "partial pardon" fails to erase this constitutional error.

Mr. Blount's initial sentence of six life terms violates *Graham*, and the Virginia state court's denial of post-conviction relief for him in reliance on *Angel v. Commonwealth* and Virginia's geriatric parole provision violates *LeBlanc*. As the Fourth Circuit reasoned, the Virginia state court "unreasonably concluded that Geriatric Release . . . complies with *Graham*'s parole requirement." *LeBlanc*, 2016 WL 6652438, at *13. The former Governor's "partial

pardon" does not render moot Mr. Blount's federal habeas petition, nor does it cure the constitutional violations that occurred at sentencing and through the state court's denial of post-conviction relief. Accordingly, this Court must grant Mr. Blount's petition.

### C. Constitutionality of Mr. Blount's Forty-Year Sentence

In the wake of the Governor's "partial pardon," Mr. Blount also argues that his resulting forty-year sentence is, itself, unconstitutional. Mr. Blount contends that a forty-year sentence without parole is functionally equivalent to being imprisoned until the opportunity to apply for geriatric parole arises, and is tantamount to a life sentence. He also asserts that the former Governor's "partial pardon" violated his due process rights by effecting a re-sentencing without affording him the attendant constitutional protections of a sentencing hearing, including the right to counsel and the right to present evidence. Because the Court has granted Mr. Blount's habeas petition in light of *Graham* and *LeBlanc*, the merits of these arguments will remain unresolved at this time.

However, Mr. Blount's contention that a forty-year sentence is functionally equivalent to imprisonment until the opportunity to apply for geriatric parole arises underscores the difference—and the key similarities—between this case and *LeBlanc*. In *LeBlanc*, the Fourth Circuit recognized that *Graham* announced three minimum requirements for parole or early release programs for juvenile non-homicide offenders sentenced to life imprisonment: (1) such offenders must be afforded with the "opportunity to obtain release based on demonstrated maturity and rehabilitation;" (2) this opportunity must be "meaningful" and not a "remote possibility;" and (3) early release or parole programs must take into account the lesser culpability of juvenile offenders. *LeBlanc*, 2016 WL 6652438, at *6-*7. The court held that Virginia's geriatric release program failed to comply with each of these requirements.

19

In Mr. Blount's case, the second requirement—that the opportunity for release be "meaningful"—is inapplicable. There is no uncertainty as to whether he will obtain release by age 60. According to the "partial pardon" imposed, Mr. Blount will be released at age 56. Other issues that animate the *LeBlanc* decision remain, however. First, Mr. Blount is still deprived of the opportunity to obtain release based on demonstrated maturity or rehabilitation. Under the imposed forty-year sentence, his progress and rehabilitation remain irrelevant, and this violates the spirit of *Graham*.

Second, although the "partial pardon" referenced Mr. Blount's age at the time of his offenses, whether his youth was considered as a specific mitigating factor, as is required by *Graham*, is undetermined. Furthermore, the "partial pardon" was not governed by any predictable standards, which casts doubt upon the "meaningfulness" of this avenue for release. *See id.* at *10.

In the context of lengthy term-of-years sentences for juvenile offenders, courts are guided by the important principles set forth in *Miller* and *Graham*, and this District's broad interpretation of those principles in recognition of the fact that "juveniles are typically less culpable than adults." *Graham*, 560 U.S. at 90 (citing *Roper v. Simmons*, 543 U.S. 551, 560 (2005)); *see also Contreras v. Davis*, 1:13cv772, 2017 WL 372330, at *4-*5 (E.D. Va. Jan. 26, 2017) (declining to adopt a "narrow interpretation" of Supreme Court precedent and finding that the petitioner's 77-year sentence for a homicide offense he committed as a juvenile amounted to a "*de facto* life sentence" that is "irreconcilable with the mandates of *Graham* and *Miller*"). Applying the constitutional guidance from Supreme Court precedent, and the common sense inference that imprisonment from age 16 through 56 deprives a human being of significant life

experiences, this Court views a forty-year sentence for non-homicide offenses committed by a fifteen-year-old as harsh and inhumane.[11]

## CONCLUSION

Mr. Blount's objections to the Magistrate Judge's Report and Recommendation (ECF No. 8) are **SUSTAINED.** Accordingly, Respondent's Motion to Dismiss (ECF No. 3) is **DENIED.** Because the state court's decision involved an unreasonable application of clearly established federal law set forth in *Graham v. United States*, 560 U.S. 48 (2010), Mr. Blount's Petition (ECF No. 1) is **GRANTED.** This case is **REMANDED** to the state court for resentencing in accordance with the guidance enunciated by the United States Supreme Court in *Graham* and in accordance with the rehabilitative and humane principles established by the Eighth Amendment to the United States Constitution. Mr. Blount may not be sentenced to life without the possibility of parole for non-homicide offenses he committed as a juvenile.

The Clerk is **REQUESTED** to forward a copy of this Order to all parties and counsel of record.

**IT IS SO ORDERED.**

Arenda L. Wright Allen
United States District Judge

May 26th, 2017
Norfolk, Virginia

---

[11] *See, e.g., Casiano v. Comm'r of Correction*, No. 19345, 2015 WL 3388481, at *11 (Conn. May 26, 2015) (concluding that "a fifty year term and its grim prospects for any future outside of prison effectively provide a juvenile offender with 'no chance for fulfillment outside prison walls, . . . no hope.'"); *Bear Cloud v. State*, 334 P.3d 132, 144 (Wyo. 2014) (holding that an aggregate sentence of just over forty-five years was the *de facto* equivalent of a life sentence without parole); *State v. Null*, 836 N.W.2d 41, 72 (Iowa 2013) (holding that "*Miller*'s principles are fully applicable to a lengthy term-of-years sentence"); *but see Bunch v. Smith*, 685 F.3d 546, 552-53 (6th Cir. 2012) (concluding that even though an aggregate sentence of eighty-nine years may be the functional equivalent of life, *Graham* applied only to sentences of "life," not aggregate sentences that result in a lengthy term of years).