**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-6743

TRAVION BLOUNT,

        Petitioner - Appellee,

v.

HAROLD W. CLARKE, Director of the Virginia Department of Corrections,

        Respondent - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Arenda L. Wright Allen, District Judge. (2:12-cv-00699-AWA-RJK)

Argued: January 24, 2018                                                                       Decided: May 15, 2018

Before WILKINSON, NIEMEYER, and MOTZ, Circuit Judges.

Vacated and remanded with instructions by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge Motz joined.

**ARGUED:** Matthew Robert McGuire, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellant. John Arthur Coggeshall, Norfolk, Virginia, for Appellee. **ON BRIEF:** Mark R. Herring, Attorney General, Trevor S. Cox, Acting Solicitor General, Katherine Quinlan Adelfio, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellant.

NIEMEYER, Circuit Judge:

Travion Blount was sentenced by a Virginia state court in March 2008 to six consecutive terms of life imprisonment plus 118 years' imprisonment for nonhomicide crimes that he committed when he was 15 years old. Under Virginia law, Blount was subject to a geriatric release program, under which he would have been eligible for conditional release once he turned 60 years old. *See* Va. Code Ann. § 53.1-40.01.

After the Supreme Court decided *Graham v. Florida*, 560 U.S. 48 (2010), which prohibited juvenile offenders convicted of nonhomicide crimes from being sentenced to life without parole, Blount filed an application for a writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2254, arguing that he was entitled to a new sentencing hearing under *Graham*. While the application was pending, however, Virginia Governor Robert McDonnell issued Blount a partial pardon, reducing his sentence to 40 years' imprisonment. The Director of the Virginia Department of Corrections ("the Commonwealth") accordingly requested that Blount's habeas application be dismissed as moot.

The district court denied the Commonwealth's motion and granted Blount habeas relief, ordering (in two separate orders) that he be resentenced in light of *Graham*. On appeal, the Commonwealth contends that the district court erred in several respects, including by (1) relying on our decision in *LeBlanc v. Mathena*, 841 F.3d 256 (4th Cir. 2016) (affirming the grant of habeas relief in similar circumstances), even after that decision was reversed by the Supreme Court in *Virginia v. LeBlanc*, 137 S. Ct. 1726 (2017) (per curiam); and (2) refusing to dismiss Blount's habeas application as moot

2

following Governor McDonnell's partial pardon as required by our decision in *United States v. Surratt*, 855 F.3d 218 (4th Cir. 2017) (en banc), and instead electing to follow the dissenting opinion in *Surratt* as more persuasive.

We agree with the Commonwealth's position and accordingly vacate the relevant orders of the district court granting habeas relief and remand with instructions to dismiss Blount's habeas application with prejudice under our decision in *Surratt*.

I

When he was 15 years old, Blount participated with two others in the armed robbery of 12 people at a house party in Norfolk, Virginia, in September 2006. Following a trial in the Circuit Court for the City of Norfolk, a jury convicted him of 49 felonies stemming from the robbery: 12 counts of abduction with intent to extort money, in violation of Va. Code Ann. § 18.2-48; 10 counts of robbery and 2 counts of attempted robbery, in violation of § 18.2-58; 24 counts of using a firearm in the commission of a felony, in violation of § 18.2-53.1; and 1 count of conspiracy, in violation of § 18.2-22. The trial court sentenced Blount in March 2008 to six consecutive terms of life imprisonment plus 118 years' imprisonment. In contrast, Blount's two adult coconspirators, who pleaded guilty pursuant to plea agreements, were sentenced to 10 and 13 years, respectively. Under Virginia law, Blount was subject to a geriatric release program, under which he would have been eligible to apply for conditional release once he turned 60 years old. *See* Va. Code Ann. § 53.1-40.01.

Shortly after Blount's convictions became final, the Supreme Court handed down its decision in *Graham*, holding that the Eighth Amendment prohibits juvenile offenders convicted of nonhomicide crimes from being sentenced to life imprisonment without parole. The Court stated that while "[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime," it must give such offenders "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham*, 560 U.S. at 75. Based on *Graham*, Blount filed a motion to vacate his state sentence, but the Norfolk Circuit Court denied that motion, relying on the decision of the Virginia Supreme Court in *Angel v. Commonwealth*, 704 S.E.2d 386, 402 (Va. 2011), which held that Virginia's geriatric release program satisfied *Graham* by providing juvenile nonhomicide offenders serving life sentences with a meaningful opportunity for release based on demonstrated maturity and rehabilitation. The Virginia Court of Appeals affirmed, agreeing that *Angel* controlled Blount's case, and in July 2012, the Virginia Supreme Court refused his further appeal.

Shortly thereafter, Blount filed this application for a writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2254, contending that, under *Graham*, his sentence of six life terms plus 118 years' imprisonment for nonhomicide offenses violated the Eighth Amendment. He alleged that the Virginia courts' reliance on *Angel* to deny his request for relief "resulted in a decision that was contrary to, or involved an unreasonable application of," *Graham*, thereby making him eligible for federal habeas relief under § 2254(d)(1). The Commonwealth filed a motion to dismiss Blount's application, and a magistrate judge recommended granting the motion. The district court, however, ordered

4

supplemental briefing and directed the Commonwealth to respond to Blount's discovery requests.

While discovery was proceeding, Blount petitioned the Governor of Virginia for a "conditional pardon," seeking a "reduction of his sentence . . . to a more appropriate amount of time for the crimes he committed" and specifically requesting "a 20 year period, or less, of incarceration." Blount stated that he would be "willing to strictly abide by any and all conditions the Governor [might] place on a pardon." In response, Virginia Governor Robert McDonnell, invoking Article V, Section 12 of the Virginia Constitution, issued an executive order dated January 10, 2014, that reduced Blount's sentence to 40 years' imprisonment. Styled as a "commutation," the executive order cited Blount's "young age at the time of the crime [and] his multi-life sentences compared to the sentences of his older co-conspirators" as reasons, among others, for reducing his sentence. As a result of the Governor's order, Blount's projected release date with good-time credits became December 3, 2046, when he would be 56 years old.

The Commonwealth notified the district court of the executive order and argued that the Governor's action mooted Blount's habeas application. Blount, however, argued that the Governor only possessed authority to "commute" a death penalty sentence and that, to be valid, the Governor's action must instead be viewed as a conditional pardon, which could only be effective upon Blount's consent and which could be revoked for nonperformance. He asserted accordingly that he was "still subject to the six life sentences plus 118 years he received upon his conviction" and that his habeas application therefore remained justiciable.

Initially, the district court agreed with Blount that Governor McDonnell lacked the power to reduce the length of his prison sentence unconditionally and therefore concluded that Blount remained subject to his original sentence. On the Commonwealth's motion for reconsideration, however, the district court decided to certify two questions of law to the Virginia Supreme Court: (1) whether Governor McDonnell's executive order qualified as a conditional pardon or a commutation; and (2) whether the executive order was valid under the Constitution of Virginia. As required by Virginia's certification rule, *see* Va. S. Ct. Rule 5:40, the district court stated that "[t]he answers to the certified questions will be determinative of the suit now pending before the Certifying Court," explaining that, "[i]f the Governor's actions [reducing the length of Blount's sentence to 40 years] were constitutional, Mr. Blount's claims challenging his life sentences [would be] moot."

In response, the Virginia Supreme Court held that the Governor's executive order was neither a commutation nor a conditional pardon, but rather a partial pardon that was validly issued under the "general pardoning power granted by Article V, Section 12 of the Constitution of Virginia." *Blount v. Clarke*, 782 S.E.2d 152, 158 (Va. 2016). The court noted further that the partial pardon was "self-executing" and that "its efficacy [did] not depend on whether Blount . . . accept[ed] . . . or reject[ed] it." *Id.*

Upon receiving the Virginia Supreme Court's decision, the district court ordered supplemental briefing to address "the extent to which it resolve[d] the issues presented in this litigation" and "whether [the] action should be dismissed" as moot. The Commonwealth noted that the district court had already certified the question as

6

"determinative" of the case and argued that since the Virginia Supreme Court had confirmed that the Governor had validly reduced Blount's sentence to 40 years' imprisonment, it was now clear that Blount's habeas claim challenging the constitutionality of his *original* sentence was moot. Blount, however, asserted that "the Governor's 'partial pardon' of [his] sentence to 40 years [did] not cure the Commonwealth's constitutionally deficient sentencing of [him]."

Agreeing with Blount, the district court, in an order dated May 26, 2017, granted his application for a writ of habeas corpus and directed the state trial court to resentence him. Explaining its decision, the court noted that "[w]ith the exception of the Governor's 'partial pardon,'" Blount's case "mirror[ed]" the facts of *LeBlanc v. Mathena*, 841 F.3d 256 (4th Cir. 2016), where we affirmed the grant of habeas relief to another Virginia juvenile nonhomicide offender serving multiple life terms on the ground that the Virginia trial court had unreasonably applied *Graham* when it relied on *Angel*'s holding that the Commonwealth's geriatric release program provided juvenile offenders with the meaningful opportunity for release required by *Graham*, *id.* at 259–60. Based on *LeBlanc*, the district court stated that it was "compelled to conclude that the Virginia state court's denial of relief to Mr. Blount in reliance on *Angel v. Commonwealth* . . . amounted to an unreasonable application of the clearly established federal law announced in *Graham*."

The district court held further that the Governor's partial pardon did not render the *Graham* violation moot, concluding that "[t]he imposed 'partial pardon' is an executive action that did not affect Mr. Blount's eligibility for habeas relief." The court

7

acknowledged our recent decision in *Surratt*, where we held that the President's commutation of a federal prisoner's mandatory life sentence to a term of 200 months' imprisonment rendered moot his appeal in an action challenging his original mandatory life sentence. 855 F.3d at 219. The court, however, chose to rely on the dissenting opinion, stating that, "[i]n the absence of substantive reasoning behind the majority's ruling [in] the Memorandum Order in *Surratt*," it was "persuaded by the dissenting opinion" and "the principle that a petitioner's original sentence remains unlawful regardless of whether the current sentence suffers from a constitutional or fundamental defect." (Internal quotation marks omitted). The district court added, "Because the Court cannot be sure that Mr. Blount's unlawful original sentence did not taint his 'partially pardoned' sentence, Mr. Blount suffers a continuing injury from that original sentence, an injury that can be remedied by vacating the 'partially pardoned' sentence and remanding for resentencing." (Internal quotation marks and alterations omitted). At bottom, the court concluded that "[t]he crux of *Graham* is that the Eighth Amendment prohibits States from making the judgment at the outset that juvenile non-homicide offenders never will be fit to reenter society. That occurred in this case, and a 'partial pardon' fails to erase this constitutional error." (Internal quotation marks and alterations omitted).

Less than a month after the district court entered its May 26, 2017 order, the Supreme Court reversed our decision in *LeBlanc*, holding that "it was not objectively unreasonable for the state court to conclude that, because [Virginia's] geriatric release program employed normal parole factors, it satisfied *Graham*'s requirement that juveniles convicted of a nonhomicide crime have a meaningful opportunity to receive

8

parole." *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1729 (2017) (per curiam). Thereupon, the Commonwealth promptly filed a motion under Federal Rule of Civil Procedure 59(e) to alter or amend the district court's judgment, arguing that the Supreme Court's decision in *LeBlanc* was "an intervening change in law that control[led] the outcome of this case." The district court, however, denied the Commonwealth's motion by order dated July 21, 2017, concluding that *LeBlanc* was not "an intervening change in controlling law," because the Supreme Court's "ruling did not address the merits of *LeBlanc*, and did not consider whether Virginia's geriatric parole provision satisfies *Graham* or the requirements recognized in the Eighth Amendment." The district court concluded again "that Mr. Blount's sentencing was constitutionally deficient" because, "[b]y imposing six consecutive life sentences (plus 118 years) upon a juvenile non-homicide offender, the sentencing court at the outset made a determination that Mr. Blount was unfit to reenter society."

From the district court's orders of May 26 and July 21, 2017, the Commonwealth filed this appeal.

After briefing on appeal was completed but before oral argument, Virginia Governor Terence McAuliffe granted Blount a second pardon — a "Conditional and Partial Pardon" — on January 12, 2018, that reduced Blount's 40-year sentence to 14 years. The pardon was conditioned on Blount's successful completion of a reentry program, his entry into a three-year period of supervised release, and his compliance "with all other conditions set by the Virginia Parole Board during his continued incarceration and supervised release, including maintaining good behavior." The

9

Governor's order also authorized the "Virginia Parole Board [to] revoke . . . Blount's pardon based on a violation of one or more of the conditions . . . or based on a finding by the Board that [Blount] is otherwise unfit or unsuitable to be released or remain on supervision."

II

The Commonwealth contends that "[t]he district court committed numerous reversible errors throughout this case," advancing on appeal three specific assignments of error. *First*, it contends that "the district court abused Virginia's certification process by representing to the Virginia Supreme Court that its answers to two certified questions would be case-dispositive [as required for certification], but then concluding after the fact that the questions were actually irrelevant to this case." *Second*, it contends that the district court erred in failing to apply our decision in *Surratt* to conclude that the case became moot when Governor McDonnell exercised his clemency power and reduced Blount's sentence to 40 years' imprisonment. And *third*, it contends that the district court erred by refusing to accept that Blount's case was "entirely controlled by the U.S. Supreme Court's decision in *LeBlanc*," which overruled the decision of this court on which the district court had relied. In addition, it maintains that Governor McAuliffe's recent pardon did not render its appeal moot.

Embracing the district court's reasoning, Blount contends that "Governor McAuliffe's pardon, as well as the earlier pardon from Governor McDonnell, cannot retroactively 'cure' the original unconstitutional sentence." While Blount thus contends

10

that he is still entitled to the resentencing ordered by the district court, he nonetheless states that, in light of the second pardon, he no longer wishes to prosecute his habeas action further, although he will only agree to a voluntary dismissal of his habeas petition without prejudice.

Both parties thus agree that Governor McAuliffe's recent pardon does not render the issues on appeal moot. And we too agree. First, the recent pardon is conditioned on Blount's maintaining good behavior over the next several years and may be revoked by the Parole Board, in which case Blount's earlier 40-year sentence that was the subject of the district court's orders would again become operational. Moreover, under the district court's reasoning in those orders, Governor McAuliffe's further reduction of Blount's sentence would have no effect on Blount's entitlement to a new sentencing hearing. Thus, as the Commonwealth argues, if the district court's orders are allowed to stand, they likely require the Commonwealth "to hold a new sentencing hearing for . . . Blount notwithstanding Governor McDonnell's and Governor McAuliffe's pardons."

On the merits, the Commonwealth's first assignment of error that the district court abused the certification process raises no insubstantial question because the cooperation between federal and state courts in the certification process necessarily depends on the preservation of the States' willingness to accept questions. Similarly, its third assignment of error that the district court erroneously continued to rely on our decision in *LeBlanc* even after it was reversed by the Supreme Court raises a substantial question. Nonetheless, our holding here rests entirely on the resolution of its second assignment of error — the question of whether, in light of Governor McDonnell's partial pardon and

11

our decision in *Surratt*, the district court had jurisdiction to grant any habeas relief in the first place.

Blount's habeas application is based on his claim that his sentence of six life terms plus 118 years' imprisonment violated the Eighth Amendment under *Graham*, which instituted a categorical ban on life-without-parole sentences for juvenile nonhomicide offenders like Blount. Resolution of Blount's habeas application thus turned on whether Virginia courts had unreasonably applied *Graham* in holding that Virginia's geriatric release program provided offenders like him with a meaningful opportunity to obtain release, as required by *Graham*. *See* 28 U.S.C. § 2254(d)(1).

Before the district court could address that issue, however, Governor McDonnell, exercising his pardon power, reduced Blount's sentence to 40 years' imprisonment, reflecting his "determination . . . that the public welfare [would] be better served by inflicting less than the judgment fixed." *Blount*, 782 S.E.2d at 156 (quoting *Biddle v. Perovich,* 274 U.S. 480, 486 (1927)). Thus, Blount's habeas application, which challenged the constitutionality of his *original sentence*, no longer presented a live dispute, since he was no longer subject to a sentence of life imprisonment but was instead serving a substantially reduced sentence that was the product of the Governor's act of executive clemency. Consequently, any violation of *Graham* at Blount's initial sentencing would be an invalid basis on which to vacate the 40-year sentence fixed by the Governor. The district court thus lacked the authority to grant Blount "any effectual relief whatever," and his habeas petition accordingly should have been dismissed as moot. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (recognizing that a case becomes moot

12

"when it is impossible for a court to grant any effectual relief whatever to the prevailing party" (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012))). And we recognized as much in *Surratt*.

In *Surratt*, Surratt received a mandatory life sentence for his drug-trafficking conspiracy conviction based on four prior drug convictions that, at the time, qualified as enhancing predicates. After his conviction had become final and after his first § 2255 motion for postconviction relief had been rejected, we overruled the precedent under which his prior convictions qualified as enhancements that triggered a mandatory life sentence, *see United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc), and Surratt then applied for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. As a federal prisoner, he could employ § 2241 only if a § 2255 motion was "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). The district court concluded that § 2255(e) did not apply and denied Surratt's § 2241 petition, and Surratt appealed. While Surratt's appeal was pending, however, the President of the United States commuted Surratt's life sentence to a term of 200 months' imprisonment.

After receiving briefing from the parties about the impact of this development, we held that the President's commutation of Surratt's sentence rendered his appeal moot. *Surratt*, 855 F.3d at 219. Judge Wynn dissented, concluding that Surratt was entitled to a new sentencing hearing, at which he would have faced an advisory sentencing range of only 120 to 137 months' imprisonment, which was below both his 200-month term under the President's commutation and the 140 months he had already served. *Id*. at 225–26 (Wynn, J., dissenting). The majority, however, rejected this approach and instead

13

dismissed his appeal as moot, necessarily concluding that we could not disturb Surratt's presidentially commuted sentence based on his claim that he was improperly subjected to a mandatory minimum life sentence at his original sentencing hearing. *Id.* at 219; *see also id.* (Wilkinson, J., concurring) (explaining that, "[a]bsent some constitutional infirmity in the commutation order, which is not present here, we may not readjust or rescind what the President, in the exercise of his pardon power, has done").

The district court's order awarding Blount habeas relief indicates that the court was well aware of our holding in *Surratt* but declined to follow it, finding the dissenting opinion more "persua[sive]." But the court was not free to do so, and it erred as a matter of law in failing to apply *Surratt*. Had the district court properly applied *Surratt*, it would have been required to conclude that Governor McDonnell's valid partial pardon reducing Blount's sentence to 40 years' imprisonment rendered Blount's habeas application moot and that the court was therefore *without jurisdiction* to address it and opine on the constitutionality of Blount's original sentence under *Graham*, as it did.

Accordingly, we vacate the district court's orders dated May 26, 2017, and July 21, 2017, and remand with instructions to dismiss Blount's habeas petition with prejudice.

VACATED AND REMANDED<br>WITH INSTRUCTIONS